CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 2 6 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUGLAS SHARRON PIGGEE, ) | |
| Plaintiff, ) | Civil Action No. 7:08-cv-00474 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TERRY O'BRIEN, et al., ) | By: Hon. James C. Turk |
| Defendant. ) | Senior United States District Judge |

Plaintiff Douglas Sharron Piggee, a federal inmate proceeding pro se, brings this Bivens[1] civil rights action against federal prison officials at the United States Penitentiary in Lee County, Virginia (USP Lee). In his complaint, Piggee alleges that the defendants violated his First Amendment and due process rights. Upon consideration of the complaint as amended, the court finds that the complaint should be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief may be granted.[2]

I.

Piggee specifically alleges the following facts. (Pl. Mem. A (docket #7, "Plaintiff's response") at 1-3.) Around May 31, 2007, Piggee was called to the Discipline Hearing Officer's (DHO) office at USP Lee about an incident report written at United States Penitentiary Hazleton (USP Hazleton). The incident report alleged that Piggee assaulted a correctional officer at USP Hazleton in September 2006. The hearing could not be held at USP Hazleton because Piggee was being transferred to USP Lee on the day that the hearing was scheduled at USP Hazleton.

Defendant Rupert, a DHO at USP Lee, conducted the hearing. Piggee told Rupert at the

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (recognizing a damages remedy to vindicate violations of constitutional rights by individual federal officials).

[2] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

hearing that the hearing violated due process because Piggee could not call a witness to his defense, exculpatory video footage showing the officer assaulting Piggee had been "purged" to cover up the officer's actions, and numerous deadlines regulating the investigation were violated. Piggee claimed that 28 C.F.R. 541.17(d), "Procedures before the Discipline Hearing Officer," required the defendants to conduct Piggee's disciplinary hearing about his conduct at USP Hazleton within sixty days after Piggee arrived at USP Lee.[3] After considering the evidence, Rupert found Piggee guilty of assaulting the correctional officer at USP Hazleton. As punishment, Rupert authorized the removal of forty days of Piggee's good-time credits.

Piggee argues that retaliatory acts began after Rupert found Piggee guilty of the USP Hazleton violation. Defendant Pitt called Piggee into an office sometime after the disciplinary hearing. While in the office, Pitt told Piggee that, "no nigger inmate that assaults a white officer would live to get away with it." The first act of alleged retaliation occurred on April 1, 2007, when a racial incident occurred in Piggee's prison unit. Despite "clear video camera footage that cleared plaintiff of any involvement in the incident," Pitt locked Piggee in administrative detention for thirty days without notice of the charges or a hearing.

The second act of alleged retaliation occurred on April 4, 2008, when forty-seven books of United States postage stamps were taken from Piggee's cell without being recorded into an official log. Piggee filed a grievance on May 18, 2008, but did not receive a response. Pitt told Piggee that Piggee owed a debt, but Piggee reassured Pitt that no debt was owed. Pitt subsequently requested that Piggee be placed in administrative detention. Piggee did not receive a hearing about the administrative detention decision. Piggee filed a sensitive grievance, but a

---

[3] It is unclear from Piggee's submissions to the court how many days passed between his transfer to USP Lee and his first disciplinary hearing.

2

regional director rejected the grievance "for frivolous reasons."

Pitt left Piggee's property unsecured for approximately two weeks while Piggee was in administrative detention. When Piggee's property was brought to the special housing unit on August 5, 2008, prison staff found a knife in his property, and Piggee received a disciplinary charge. Piggee immediately requested that defendant O'Brien, the warden of USP Lee, void the knife charge because his property had been left unsecured for weeks, but O'Brien denied the request as premature because the disciplinary hearing had not yet occurred.

On September 12, 2008, Rupert conducted the disciplinary hearing about the knife violation. Correctional Officer Fraley confirmed that Piggee's property was left unsecured before it was brought to the special housing unit on August 5, 2008. Rupert misconstrued the evidence by misquoting Correctional Officer Fraley's statement to mean that the property had been secured. Piggee subsequently requested that Rupert call Piggee's counselor as a rebuttal witness to confirm that his property was left unsecured, but Rupert refused to call the witness. Rupert found Piggee guilty of the violation and authorized the removal of forty more days of good-time credits.

The court liberally construes Piggee's pleadings. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). After reviewing Piggee's complaint and two memorandums of facts and laws, the court construes Piggee's arguments to be that:

    A.    Pitt converted Piggee's books of postage stamps;

    B.    Pitt and O'Brien discriminated against Piggee because of his race, threatened to kill him, and are making his life miserable;

    C.    Pitt planted incriminating evidence, and O'Brien and Rupert denied Piggee due process at his disciplinary hearings;

3

D.  Defendants retaliated against Piggee for his assault on a correctional officer by filing false disciplinary reports, requesting disciplinary transfers and administrative detention, frustrating his administrative remedies, confiscating his postage stamps, and planting incriminating evidence; and

E.  Defendants conspired to destroy evidence when they purged video camera footage that exonerated Piggy from charges that he assaulted a correctional officer.

(Compl. at 2; Pl. Mem. A. (docket #7); Pl. Mem. B. (docket #8).) Piggee requests that the court compel: the return of eighty-two good-time credits to his sentence calculation and to expunge the related incident reports from his record; reimbursement for the converted forty-seven books of stamps or permit him to show ownership and send the stamps home; and the approval of Piggee's original transfer request and not Rupert's transfer request.[4]

II.

Piggee filed a "motion to add defendants to lawsuit" (docket #7), which the court construes as a motion to amend. Piggee seeks to add defendants D. Wilson and Rupert to his Bivens action. Rule 15(a) of the Federal Rules of Civil Procedure states that a party may amend its pleading once as a matter of course if the party amends its pleading before the party is served with a responsive pleading. The defendants have not filed a responsive pleading. Accordingly, the court grants Piggee's motion to amend to name Rupert and D. Wilson as defendants to this Bivens action.

Piggee filed a motion (docket #9), titled as "Injunction," requesting that the court issue a subpoena to Correctional Officer Fraley to support Piggee's due process claim about his second

---

[4] Piggee's submissions to the court do not explain what transfers Piggee or Rupert requested.

disciplinary hearing. Piggee states that Fraley would verify that "the defendants falsified Piggee's statements[.]" Piggee also requests the subpoena to receive records regarding Piggee's confiscated postage stamps and Piggee's second disciplinary hearing.

The court construes the request as a motion to compel discovery. Pursuant to Federal Rule of Civil Procedure 26(a)(1)(B)(iv), discovery is not permitted in a pro se prisoner civil action without the express permission of the court. The court did not previously grant permission and finds that this discovery request is premature because the defendants have not yet filed an answer. Furthermore, the information Piggee seeks through the subpoena is unnecessary because the claims the evidence would arguably support is not cognizable in this Bivens action. Accordingly, Piggee's motion to compel discovery is denied.

### III.

In Bivens, the Supreme Court held that damage suits could be maintained against federal officials for violations of the Constitution committed when the officials were acting under color of law. 403 U.S. at 392. An action under Bivens is almost identical to an action under 42 U.S.C. § 1983, except that the former is maintained against federal officials for a violation of a constitutional right while the latter is against state officials. See Carlson v. Green, 446 U.S. 14, 24-25 (1980); Butz v. Economou, 438 U.S. 478, 504 (1978). Case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S. 825, 839-40 (1994); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). To hold a supervisory official liable under Bivens, a plaintiff must make a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. Fisher v. Washington Metro. Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44

5

(1991).

The court is required to dismiss any action or claim filed by a prisoner if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915A. A claim or action is frivolous if it is based on "an indisputably meritless legal theory," or "clearly baseless" factual contentions. Neitzke v. Williams, 490 U.S. 319, 327 (1989). A litigant may be deemed to act maliciously if the complaint or the inmate's litigation history reflect that his motive in bringing suit is merely to vex and harass the defendants. Johnson v. Edlow, 37 F. Supp.2d 775, 776 (E.D. Va. 1999). An action or claim may be dismissed for "failure to state a claim" when the court finds that the allegations, taken in the light most favorable to plaintiff, are nothing "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" that are insufficient "to raise a right to relief above the speculative level" to one that is "plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). In short, to survive screening under § 1915A, plaintiff must "allege facts sufficient to state all the elements of [his] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Piggee fails to assert any claim against D. Wilson. Piggee names D. Wilson only once in his motion to amend, but Piggee does not discuss D. Wilson again in any of his submissions to the court. Accordingly, D. Wilson is terminated as a defendant in this Bivens action.

A.   *Pitt allegedly converted Piggee's books of postage stamps.*

Piggee alleges that forty-seven books of stamps were taken from his cell without being recorded. Piggee seeks payment of the value of the stamps or a return of the stamps so he can mail them out of the prison. In his complaint, Piggee alleges that Pitt confiscated the stamps. (Compl. at 2.) In his memorandum, Piggee does not name who took the stamps. (Pl. Mem. A.)

6

However, Piggee includes a grievance form and prison receipt documenting his stamp claim. (Pl. Mem. A. Ex. B-2 at 2.) The prison's confiscation receipt indicates that staff member "B. Martin" confiscated the property, but neither Martin's nor Piggee's signature appears on the form. Piggee acknowledged in his informal resolution grievance form that B. Martin took the stamps. Id. at 1. Pitt's name does not appear anywhere on the forms, and Piggee fails to allege any other facts regarding Pitt's personal involvement in the confiscation. Conclusory allegations that Pitt was somehow involved with the removal of Piggee's stamps are insufficient to state a claim upon which relief may be granted. Accordingly, the court dismisses this claim, pursuant to § 1915A(b)(1).

To the extent Piggee claims that someone randomly took his stamps outside the normal confiscation process, he does not state a constitutional violation. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation so long as the inmate has an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533-34 (1984). The prison has grievance procedures to pursue this claim. Furthermore, the Federal Tort Claims Act (FTCA) is also available to Piggee. See CHoPP Computer Corp. v. United States, 5 F.3d 1344, 1347 (9th Cir. 1993) (holding that claim for conversion was not beyond scope of FTCA); see also Universal C. I. T. Credit Corp. v. Kaplan, 198 Va. 67, 75-76 (1956) (discussing elements of conversion under Virginia law). Under the FTCA, Piggee could only recover monetary damages, not equitable relief. To the extent that Piggee requests injunctive relief in the form of the return of his property, the FTCA would still be an adequate remedy because postage stamps have a readily identifiable market value. Therefore, Piggee has an adequate remedy at law that forecloses equitable relief, and Piggee could proceed with a tort claim for damages under the

7

FTCA to the appropriate federal agency.[5] See 28 U.S.C. §§ 2671-2680.

      B.     *Pitt and O'Brien allegedly discriminated against Piggee because of his race, threatened to kill him, and are making his life miserable.*

Piggee argues that both O'Brien and Pitt discriminated against him because of his race, threatened to kill him, and are making his life miserable. Construing the complaint liberally, the most Piggee alleges in his submissions to the court is that Pitt spoke abusively to him by using a racial epithet.[6] Verbal abuse and harassment, without more, do not state a constitutional claim. The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate a constitutional right); Keyes v. City of Albany, 594 F. Supp. 1147, 1155 (N.D. N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim[.]"); Lamar v. Steele, 698 F.2d 1286, 1287 (5th Cir. 1983) (per curiam) (observing that "[t]hreats alone are not enough" and that "[a] [§] 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation"); Collins v. Cundy, 603 F.2d 825, 828 (10th Cir. 1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to

---

[5] The court declines to construe the claim as seeking judicial review under the FTCA because Piggee does not allege facts or present documentation suggesting that he has completed the requisite FTCA procedures. See 28 U.S.C. § 2675.

[6] Significantly, Piggee does not allege any physical contact or threat of physical force beyond his bald assertion that they threatened to kill him. Piggee does not state who made the threat, at what time, at what location, or in what context.

8

show the deprivation of a constitutional right). The law is clear that mere "threatening language and gestures of [a] penal official do not, even if true, constitute constitutional violations[.]" Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973). Accordingly, this claim must be dismissed, pursuant to § 1915A(b)(1), for failing to state a claim upon which relief may be granted.

C. *Pitt allegedly planted incriminating evidence, and O'Brien and Rupert denied Piggee due process at his disciplinary hearings.*

In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). A liberty interest is implicated when prison officials remove an inmate's good-time credits that are applicable toward an early release from prison. See Sandin v. Conner, 515 U.S. 472, 478-87 (1995); Wolff v. McDonnell, 418 U.S. 539, 557 (1974).

The sole remedies Piggee seeks for the alleged violations of his constitutional rights are to compel the government to restore his good time credits and expunge his related disciplinary charges, thereby accelerating his release from prison. Therefore, such an outcome challenges both the fact and duration of Piggee's confinement, and Piggee's sole remedy in federal court is a properly filed habeas petition, pursuant to 28 U.S.C. § 2241. See Edwards v. Balisok, 520 U.S. 641, 645-47 (1997) (stating that § 1983 damages claim arguing that due process rights violations resulted in loss of good-time credits should be brought as habeas corpus petition); Heck v. Humphrey, 512 U.S. 477, 486-88 (1994) (stating that a § 1983 claim that would necessarily demonstrate the invalidity of confinement or its duration should be brought as a habeas claim); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (stating that writ of habeas corpus is sole federal remedy when inmate challenges fact or duration of imprisonment and relief sought is finding that

9

the inmate is entitled to a speedier release). Therefore, this claim is not actionable under Bivens. Piggee would need to file a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the district of his confinement after exhausting his administrative remedies. Although Piggee is confined within the court's jurisdiction, the court declines to construe the claim as a habeas petition because Piggee does not adequately document administrative exhaustion of his due process claim. Accordingly, the court dismisses this claim, pursuant to § 1915A(b)(1), for failing to state a claim upon which relief may be granted.

> D. *Defendants allegedly retaliated against Piggee for his assault on a correctional officer by filing false disciplinary reports, requesting disciplinary transfers and administrative detention, frustrating his administrative remedies, confiscating his postage stamps, and planting incriminating evidence.*

Piggee alleges that the defendants retaliated against him for his complaint against a USP Hazleton correctional officer by filing false disciplinary reports, placing Piggee in administrative detention, frustrating his ability to file administrative grievances, confiscating his stamps, and planting a knife in his personal belongings. Inmates' claims of retaliation are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

To succeed on a retaliation claim, Piggee must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Piggee must also demonstrate that he suffered some adverse impact or actual injury, more than mere inconvenience, to the exercise of his constitutional right. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993). Piggee must plead specific evidence

10

"establish[ing] that but for the retaliatory motive[,] the complained of incident . . . would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995). "Temporal proximity" between an inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a Bivens retaliation claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993). Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. Adams, 40 F.3d at 74.

Piggee fails to demonstrate retaliation because none of Piggee's acts were an exercise of a constitutional rights and the defendants' alleged acts did not directly violate a constitutional right. When filing grievances or inmate complaints, Piggee was not exercising a constitutionally protected right because he has no right to participate in a grievance procedure. Id. at 75. Changes in Piggee's "location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Therefore, confinement in administrative segregation, such as in the special housing unit, is not a violation of Piggee's constitutional right. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999). Piggee claims he was transferred because he filed an administrative grievance, but Piggee does not have a constitutional right not to be transferred from one facility to another. See O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991). The protections of the Fourth Amendment do not extend to searches of Piggee's cell or the stamps found therein. See Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). Furthermore, Piggee does not have a constitutionally recognized liberty interest in a particular security classification. Meachum v. Fano, 427 U.S. 215, 224 (1976).

11

Piggee also claims that the defendants impeded his First Amendment right to pursue administrative grievances. However, Piggee has no constitutional right to a prison grievance procedure. Adams, 40 F.3d at 75. Therefore, his allegations that the defendants interfered with his ability to exhaust his grievance remedies do not state any separate constitutional claim actionable under Bivens. Piggee also failed to show O'Brien's supervisory liability for O'Brien's own acts or the acts of a subordinate in execution of O'Brien's policies or customs. See Fisher, 690 F.2d at 1142-43.

Under these principles, Piggee's allegations fail to state any claim of retaliation because he was never exercising a constitutional right before any alleged retaliatory act occurred. Accordingly, Piggee's claims of retaliation are dismissed, pursuant to § 1915A(b)(1), for failing to state a claim upon which relief may be granted.

E. *Defendants allegedly conspired to destroy evidence when they purged video camera footage that exonerated Piggy from charges that he assaulted a correctional officer.*

Piggee alleges that the defendants conspired to purge video footage that would prove his innocence of assaulting a correctional officer at USP Hazleton. An essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1006-07 (4th Cir. 1987). Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. Murdaugh Volkswagon v. First Nat'l Bank, 639 F.2d 1073, 1075-76 (4th Cir. 1981). The plaintiff must allege facts showing that the defendants shared a "unity of purpose or a common design" to injure the plaintiff. Am. Tobacco Co. v. United States, 328 U.S. 781, 809-10 (1946).

Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and

12

fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. See Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126-27 (9th Cir. 1989); Cole v. Gray, 638 F.2d 804, 811-12 (5th Cir. 1981). Piggee fails to allege any facts indicating that the defendants acted jointly to injure him, and conclusory allegations are insufficient to state a claim upon which relief may be granted. See Adams, 40 F.3d at 74; White v. White, 886 F.2d 721, 724 (1989). Accordingly, the court dismisses this claim, pursuant to § 1915A(b)(1).

IV.

For the foregoing reasons, the court dismisses Piggee's complaint as amended, pursuant to 28 U.S.C. § 1915A, for failing to state a claim upon which relief may be granted.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

**ENTER**: This 26th day of November, 2008.

*James C. Turk*
Senior United States District Judge